IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 125,734

AUSTIN PROPERTIES, LLC,
*Appellant*,

v.

CITY OF SHAWNEE, KANSAS,
*Appellee*.

SYLLABUS BY THE COURT

1.

Under K.S.A. 12-760, Kansas courts have jurisdiction to review whether a zoning authority's decision was arbitrary and whether it complied with relevant law in rendering a decision on the reasonableness of its action.

2.

The procedures in K.S.A. 12-757(d) are still applicable in the face of a valid protest petition under K.S.A. 12-757(f).

3.

Generally, under K.S.A. 12-757(d), when a planning commission recommends approval of an amendment, the governing authority has three options. It may (1) adopt the recommendation by ordinance through majority vote; (2) override the recommendation by 2/3 majority vote; or (3) return the recommendation to the planning commission specifying the basis for its failure to approve or disapprove. However, if a valid protest petition has been filed pursuant to K.S.A. 12-757(f), the governing authority may adopt an ordinance approving the amendment only with 3/4 majority support, rather than a simple majority.

1

4.

Under K.S.A. 12-757(d), if a governing authority returns a planning commission's recommendation after its initial consideration, the planning commission may resubmit the same recommendation, submit a new and amended recommendation, or do nothing, in which case the original recommendation is considered resubmitted. Generally, when it receives a recommendation of approval back, the governing authority may adopt it through ordinance by majority vote, revise or amend and adopt by ordinance through majority vote, or do nothing. However, if a valid protest petition has been filed pursuant to K.S.A. 12-757(f), the governing authority may adopt an ordinance approving the amendment only with 3/4 majority support, rather than a simple majority.

Review of the judgment of the Court of Appeals in 64 Kan. App. 2d 166, 547 P.3d 531 (2024). Appeal from Johnson District Court; JAMES F. VANO, judge. Oral argument held December 10, 2024. Opinion filed March 7, 2025. Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed, and the case is remanded with directions.

*Melissa Hoag Sherman*, of Spencer Fane LLP, of Overland Park, argued the cause, and *Lewis A. Heaven, Jr.*, and *Caleb Phillips*, of the same office, were with her on the briefs for appellant.

*Andrew D. Holder*, of Fisher, Patterson, Sayler & Smith, LLP, of Overland Park, argued the cause and was on the briefs for appellee.

*Johnathan Goodyear*, general counsel, was on the brief for League of Kansas Municipalities, amicus curiae.

The opinion of the court was delivered by

ROSEN, J.: Austin Properties, LLC, submitted an application to the Shawnee City Council to build a multi-unit residential complex. The city council denied the application and Austin Properties petitioned the district court to reverse the denial. The district court

granted the City's motion for summary judgment, and our Court of Appeals affirmed. We reverse the lower courts and remand the case to the district court with instructions to rule in favor of Austin Properties and return the application to the City for action consistent with this opinion.

FACTUAL AND PROCEDURAL BACKGROUND

Austin Properties owns a parcel of land in Shawnee. In May 1996, J.C. Nichols Company owned land that included the property and requested the zoning be changed from agricultural to planned mixed residential and sought approval for construction of a multi-family and townhome development and a retail shopping center. The request was approved, but Nichols did not develop the property, and Rodrock Homes, Inc., eventually acquired the property. Between 2002 and 2004, Rodrock sought and gained approval for three different mixed residential developments but never moved forward with the plans.

Austin Properties eventually acquired the property. In 2019, it submitted an application to the planning commission for a "rezoning" from PUDMR to PUDMR and approval of a preliminary development plan. This request for "rezoning" was necessary even though the land was already zoned PUDMR because the Shawnee Municipal Code treats any application to establish a planned unit development (PUD) as an application for "rezoning." SMC § 17.54.720. The plan proposed a multi-family and townhome development on approximately 29 acres as a higher-end living community. The plan envisioned 42 townhome units in 14 triplex buildings and 384 multi-family units in 16 multi-story buildings.

On November 18, 2019, after conducting a public hearing, the planning commission unanimously voted to recommend that the city council approve the application.

Neighboring property owners then filed a protest petition that the city council determined was valid. Because of the protest petition, the city council determined a supermajority of the council (3/4), or 7 votes, would be required to approve the application under the SMC. On December 9, 2019, the city council considered the application at a regularly scheduled meeting.

After hearing evidence, the city council took no action on the application and voted to continue the matter to its December 23, 2019, meeting. The Council continued the vote so that Austin Properties could meet with neighboring property owners and discuss their concerns about the proposed development.

Following Austin Properties' meetings with the neighbors, Austin Properties modified its proposal to address some of the neighbors' concerns. The planning commission's staff reviewed the modifications and supported approval of the application. The city council heard additional evidence at its December 23 meeting and took its first formal action on the application with a vote on a motion to approve the application. Four Council members voted yes and four voted no. The motion failed for lack of a supermajority supporting vote. The Council took no further action on the application and informed Austin Properties its application had been denied.

On January 15, 2020, Austin Properties filed a petition for judicial review of the city council's decision under K.S.A. 12-741 et seq., the Planning, Zoning, and Subdivision Regulations in Cities and Counties Act.

The parties filed cross-motions for summary judgment. On August 12, 2022, the district court filed a journal entry granting summary judgment for the City and upholding the City's denial of the Application. Austin Properties filed a timely notice of appeal.

The Court of Appeals affirmed the district court in *Austin Properties v. City of Shawnee*, 64 Kan. App. 2d 166, 547 P.3d 531 (2024). We granted Austin Properties' petition for review and reverse the holdings of the courts below.

ANALYSIS

Austin Properties has presented three issues on appeal. We consider jurisdiction before addressing these claims.

Austin Properties filed a petition in district court pursuant to K.S.A. 12-760, a statute that lies within the Planning, Zoning, and Subdivision Regulations in Cities and Counties Act. K.S.A. 12-760 provides that "[w]ithin 30 days of the final decision of the city or county, any person aggrieved thereby may maintain an action in the district court of the county to determine the reasonableness of such final decision." Although this statute authorizes review of only reasonableness, this court has long held that Kansas courts have jurisdiction to review a zoning authority's actions for "reasonableness" *and* "the lawfulness of the action taken, that is, whether procedures in conformity with law were employed . . . ." *Highway Oil, Inc. v. City of Lenexa*, 219 Kan. 129, 132, 547 P.2d 330 (1976). By characterizing "reasonableness" and "lawfulness" as two separate considerations, our caselaw seems to create tension with the statute.

But the plain language of K.S.A. 12-760 indicates our precedent is correct, if ill-phrased. A zoning authority's decision is not reasonable as contemplated by K.S.A. 12-760 if it is unlawful. See Webster's New World College Dictionary 1210, 790 (5th ed. 2018) (defining "reasonable" as "just," and defining "just" as "legally right").

Legislative history confirms this reading. This court has held that Kansas courts may review a zoning decision's compliance with relevant law since at least 1966. *Arkenberg v. City of Topeka*, 197 Kan. 731, 735, 421 P.2d 213 (1966). While the

5

Legislature has amended zoning laws many times since then, it has never amended the jurisdictional statute to indicate it disagrees with this court's understanding of our jurisdiction. This nearly 60-year legislative acquiescence indicates our long-standing precedent is correct. See *Schmidt v. Trademark, Inc.*, 315 Kan. 196, 207, 506 P.3d 267 (2022) (Legislature acquiesced and thus supported judicial interpretation of statute when, "despite several amendments to [the statutes], the Legislature has done nothing to repudiate [the court's] interpretation"). Consequently, we will continue to consider whether a zoning authority complied with relevant law, along with whether the decision was arbitrary, in rendering a decision on the reasonableness of its action under K.S.A. 12-760.

*Standard of review*

The district court granted summary judgment for the City. "Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *First Security Bank v. Buehne*, 314 Kan. 507, 510, 501 P.3d 362 (2021). We review de novo a district court's grant of summary judgment. The grant of summary judgment in this case rested on statutory interpretation, which we also review de novo. *American Warrior, Inc. v. Board of Finney County Comm'rs*, 319 Kan. 78, 82, 552 P.3d 1219 (2024).

*Discussion*

Austin Properties argues the City failed to follow necessary procedures under K.S.A. 12-757(d) when it deemed its PUD application denied. The district court did not consider K.S.A. 12-757 but instead assessed whether the City properly complied with SMC § 17.92.030, a municipal provision that dictates the same requirements as K.S.A. 12-757(d). It concluded the City had followed the requirements in the SMC and granted

6

summary judgment for the City. The Court of Appeals agreed the City had complied with necessary procedures, but it rested its decision on K.S.A. 12-757 rather than the municipal code provision.

*Jurisdiction*

We begin our analysis by determining whether the SMC provision or the Kansas statute controls in this case. As the City acknowledges, they are substantively identical, so the City had to follow the same procedures regardless of which one applies. We conclude that in this case, both are applicable.

K.S.A. 12-741 authorizes cities to enact "planning and zoning laws and regulations . . . which do not conflict with" state law. K.S.A. 12-755(a) explicitly authorizes governing bodies to "adopt zoning regulations which may include, but not be limited to, provisions which: (1) Provide for planned unit developments . . . ."

The city of Shawnee has used this authority to create the PUDMR zoning district, "which allow[s] a variety of residential types to be developed in a unified manner," like "apartment, assisted living and other congregate living arrangements, townhome and condominium developments," and "single-family and two-family residential structures . . . ." SMC § 17.54.200.

Shawnee has also established procedures for establishing PUDs like the PUDMR. When a developer wishes to do so, they must submit an application. The SMC refers to the application as an "application for rezoning." SMC § 17.54.720 ("An application for approval of a PUD shall constitute the filing of an application for rezoning to the appropriate PUDD [planned unit development district.]"). As part of the application, the applicant must submit for approval a preliminary development plan. SMC § 17.54.800

7

("An applicant, seeking the establishment of a PUDD, shall prepare and submit to the Community Development Department, a preliminary development plan."); SMC § 17.54.710 ("Application for rezoning to a PUD district and approval of a preliminary development plan shall be made to the City upon appropriate forms available from the planning department.").

Once submitted, the application is subject to the procedures for zoning amendments in SMC § 17.92.030. SMC § 17.54.720 ("An application for approval of a PUD shall constitute the filing of an application for rezoning to the appropriate PUDD by the applicant in the same manner prescribed for amending the zoning ordinance by Section 17.92.030."). Very broadly, these procedures require a public hearing, review and recommendation by the planning commission, and review and decision by the City. If a protest petition is filed, the City may take action approving a PUDMR only with a 3/4 majority vote.

These provisions make it clear that a developer, the planning commission, and the City must comply with the requirements in SMC § 17.92.030 in establishing a PUDMR.

But the SMC also appears to make K.S.A. 12-757 applicable. This statute dictates the necessary procedures for "supplement[ing], chang[ing] or generally revis[ing] the boundaries or regulations by amendment" throughout the state and describes procedures functionally identical to SMC § 17.92.030. SMC § 17.54.070 provides that the City may "rezone land to any of the 'Planned Unit Development Districts' (PUDD)" "*in the manner provided for by K.S.A. 12-757* and other applicable Kansas statutes and in accordance with the zoning rules and regulations contained in Title 17." (Emphasis added.) And again, in a section titled "Conditions of Approval," the SMC provides "the Governing Body may rezone land to a PUD zoning district" if certain conditions exist "*in the manner provided for by K.S.A. 12-757*, other applicable Kansas statutes and in

8

accordance with the zoning rules and regulations contained in SMC Title 17 . . . ." (Emphasis added.) SMC § 17.54.090.

We conclude that, in this case, the municipal provision and the statute are both applicable. K.S.A. 12-741 and K.S.A. 12-755 clearly delegate authority to regulate the establishment of PUDs to cities and counties. And the City has utilized this authority to require PUD applications to adhere to the procedures in SMC § 17.92.030 and K.S.A. 12-757. See SMC §§ 17.54.720, 17.54.090.

The City has argued K.S.A. 12-757 is inapplicable here because the zoning designation did not change, relying on our decision in *American Warrior, Inc.*, 319 Kan. at 88. In *American Warrior*, we held that K.S.A. 12-757 was inapplicable to applications for a conditional use permit in Finney County. In doing so, we cited approvingly language from the Court of Appeals dissent explaining that K.S.A. 12-757 did not govern conditional use permits in Finney County because the permit "'does not change the existing zoning of a tract of land. The Tract [in that case] is zoned agricultural and remains zoned agricultural.'" *American Warrior, Inc.*, 319 Kan. at 87 (quoting *American Warrior*, *Inc.*, 63 Kan. App. 2d 123, 136, 525 P.3d 789 [2023] [Arnold-Burger, C.J., dissenting]).

*American Warrior* is distinguishable because the local ordinances in Finney County did not require compliance with K.S.A. 12-757, as the SMC does with PUD applications in Shawnee. Thus, we need not decide whether K.S.A. 12-757 would be inapplicable by its own terms in this case because the zoning designation did not need to change. The SMC makes K.S.A. 12-757 applicable in either event.

Generally, a state zoning statute preempts any conflict with an applicable local provision. K.S.A. 12-741; *American Warrior, Inc.*, 319 Kan. at 85-86. But in this case, the City agrees that SMC § 17.92.030 and K.S.A. 12-757 require the same procedures, so

9

they both remain applicable. Nonetheless, we center our analysis on the statute for purposes of continuity with the Court of Appeals decision and the parties' arguments. We now consider Austin Properties' claim that the City failed to follow the requirements in K.S.A. 12-757.

*The City failed to comply with relevant law.*

K.S.A. 12-757(d) requires proposed zoning amendments be submitted to the planning commission for a hearing and a recommendation. Thereafter, it provides the City:

> "(d) . . . may: (1) Adopt such recommendation by ordinance in a city or by resolution in a county; (2) override the planning commission's recommendation by a 2/3 majority vote of the membership of the governing body; or (3) return such recommendation to the planning commission with a statement specifying the basis for the governing body's failure to approve or disapprove. If the governing body returns the planning commission's recommendation, the planning commission, after considering the same, may resubmit its original recommendation giving the reasons therefor or submit new and amended recommendation. Upon the receipt of such recommendation, the governing body, by a simple majority thereof, may adopt or may revise or amend and adopt such recommendation by the respective ordinance or resolution, or it need take no further action thereon. If the planning commission fails to deliver its recommendation to the governing body following the planning commission's next regular meeting after receipt of the governing body's report, the governing body shall consider such course of inaction on the part of the planning commission as a resubmission of the original recommendation and proceed accordingly. The proposed rezoning shall become effective upon publication of the respective adopting ordinance or resolution."

K.S.A. 12-757(f) provides that a valid protest petition triggers a supermajority requirement for approving a zoning amendment:

"(f)(1) Except as provided in subsection (g), whether or not the planning commission approves or disapproves a zoning amendment, if a protest petition against such amendment is filed in the office of the city clerk or the county clerk within 14 days after the date of the conclusion of the public hearing pursuant to the publication notice, . . . the ordinance or resolution adopting such amendment shall not be passed except by at least a 3/4 vote of all of the members of the governing body."

Summarizing the relevant portions, when a planning commission recommends approval of a PUD application, the City has three options. It may (1) adopt the recommendation by ordinance through majority vote; (2) override the recommendation by 2/3 majority vote; or (3) return the recommendation to the planning commission explaining the reasons it was not approved or disapproved. K.S.A. 12-757(d); K.S.A. 12-3002 (explaining cities may pass ordinance with a majority vote). The planning commission may then "resubmit its original recommendation[s] giving the reasons therefor or submit new and amended recommendation[s]," or do nothing, in which case the original recommendation is considered resubmitted. K.S.A. 12-757(d). When it receives a recommendation of approval back, the City may adopt it through ordinance by majority vote, revise or amend and adopt by ordinance through majority vote, or do nothing. K.S.A. 12-757(d); K.S.A. 12-3002 (explaining ordinances require majority vote).

K.S.A. 12-757(f) provides a qualification to these procedures when a valid protest petition has been filed. In that case, any ordinance adopting a PUD application "shall not be passed except by at least a [three-fourths] 3/4 vote of all of the members of the Governing Body." K.S.A. 12-757(f).

In this case, the planning commission recommended the City approve Austin Properties' PUD application. Neighbors filed a valid protest petition, which triggered K.S.A. 12-757(f). This meant the City could pass an ordinance adopting the PUD only with a 3/4 majority. The city council vote for approval resulted in a 4-4 tie. So, the City

11

did not approve the plan by super-majority vote. Nor did it override the planning commission's recommendation by 2/3 majority vote. K.S.A. 12-757(d). The City took no further action on the application except to inform Austin Properties it had been denied.

Austin Properties argues the City failed to comply with the required procedures when, after it failed to approve the application with a 3/4 vote, it did not vote on denial or return the application to the planning commission with notes pursuant to K.S.A. 12-757(d).

The City disagrees. It argues that, once a protest petition is filed, K.S.A. 12-757(f) is the only applicable provision. Thus, the City claims, if the application does not receive 3/4 majority support, it is denied and no further action is taken.

We agree with Austin Properties. In the face of a valid protest petition, K.S.A. 12-757(d) is still applicable. The petition simply triggers a supermajority requirement for passing an ordinance that adopts an application. This is true during both the initial consideration and any consideration after an application has been remanded to the planning commission and resubmitted.

The Court of Appeals disagreed. It reasoned:  "[U]nder Austin's interpretation of the statute, even when neighbors file a valid protest petition, the heightened voting requirement would not apply to the second attempt at approval. This 'loophole' in the statutory scheme could allow applicants to effectively circumvent the heightened voting requirement triggered by a valid protest petition." *Austin Properties*, 64 Kan. App. 2d at 180-81. The panel reasoned that this conflicts with the legislative intent to subject protested amendments to a higher bar for approval, so it cannot be the proper interpretation. Thus, it held, "The city council's failure to achieve the 3/4 majority vote needed for approval resulted in the application's denial, and the processes for

12

resubmission of failed zoning amendments in K.S.A. 12-757(d) are inapplicable." *Austin Properties*, 64 Kan. App. 2d at 181.

Missing from the panel's reasoning is any support in the statutory language for its conclusion that the 3/4 majority requirement in K.S.A. 12-757(f) is inapplicable to the City's second consideration of an application after it was returned and resubmitted. K.S.A. 12-757(f) provides "if a protest petition against such amendment is filed . . . , the ordinance or resolution adopting such amendment shall not be passed except by at least a 3/4 vote of all of the members of the governing body." The statute *does not* provide that a 3/4 vote is required only at the first round of considerations. The panel erroneously read this into the statute.

The panel opined that its perceived problem with the remand procedures might be cured if the laws were interpreted to permit protesters to file additional protest petitions upon a planning commission's resubmittal of its recommendation. Then, it reasoned, the 3/4 majority requirement would apply to the City's consideration of the resubmitted recommendation and the statute could still effectuate legislative intent. But the panel rejected this idea because this "could create an endless loop" in which "neighbors would carry a heavy burden to refile protest petitions each time the planning commission resubmits the proposed zoning amendment to the city council." *Austin Properties*, 64 Kan. App. 2d at 181.

It is unclear how this would create an "endless loop." K.S.A. 12-757(d) directs the governing body, at its second consideration of a returned recommendation, to adopt a recommendation, amend and adopt a recommendation, or do nothing. It does not direct the governing body to send a recommendation back a third time.

Moreover, the panel does not explain why landowners would need to file a second protest petition for the 3/4 majority requirement to apply to the governing body's

13

reconsideration of a recommendation. There is no language in the statute that indicates the protest petition becomes obsolete when a planning commission's recommendation, whatever it is, is returned after the City's first consideration.

The language of K.S.A. 12-757(f) suggests, as the panel observes, that the Legislature intended to make it harder to pass zoning amendments in the face of opposition by neighboring landowners. But the statute achieves that result with its plain language—the language indicating that the governing body cannot pass an ordinance approving an amendment with less than 3/4 majority vote. When that language is applied as it is written, that intent prevails. If one instead adopts the panel's reading—that the governing body cannot pass an ordinance approving an amendment with less than 3/4 majority vote *upon its first review, but that requirement falls away at the second review*—then one must do analytical backflips to effectuate legislative intent. We will not take that path.

When employing a plain language interpretation, courts consider not only the language itself, but also the specific context in which that language is used and the broader context of the statute as a whole. In this regard, "the doctrine of in pari materia has utility beyond those instances where statutory ambiguity exists." *Bruce v. Kelly*, 316 Kan. 218, 224, 514 P.3d 1007 (2022). As we have explained, "[i]t can be used as a tool to assess whether the statutory language is plain and unambiguous in the first instance, and it can provide substance and meaning to a court's plain language interpretation of a statute." *Kelly*, 316 Kan. at 224.

Here, our plain language interpretation brings subsection (d) and (f) into workable harmony by giving meaning to both subsections, even when a protest petition is filed. In contrast, the panel's construction renders subsection (d) meaningless in those situations.

14

The lower courts erred when they concluded the procedures described in K.S.A. 12-757(d) are inapplicable in the face of a valid protest petition. The City must still follow those procedures even in the face of a petition. A valid protest petition simply increases the percentage of approval votes needed to approve the protested change. This is true at both the initial consideration and any subsequent consideration after an application has been remanded to the planning commission and resubmitted.

In this case, the City erred when, after failing to gain a supermajority's approval of the PUD application, it did not vote on denial or return the application to the planning commission with an explanation of why the application was not approved or denied.

*The SMC does not conflict with State law in subjecting PUD applications to protest petitions.*

In an alternative argument, Austin Properties argued the SMC conflicts with state law by treating applications to establish a PUD as a zoning amendment and thus subjecting the application, including the preliminary development plan, to protest petitions and the supermajority requirement. The Court of Appeals rejected this argument and so do we.

Again, K.S.A. 12-741 authorizes cities to enact "planning and zoning laws and regulations . . . which are not in conflict with" state law. This expressly gives the City the authority to enact provisions for handling PUD applications unless those provisions conflict with a Kansas statute. The SMC provisions subjecting PUD applications to a protest petition and supermajority requirement through SMC § 17.92.030 and K.S.A. 12-757 do not conflict with Kansas statutes because there is no Kansas statute prohibiting this practice or otherwise governing how PUD applications should be handled. See *American Warrior*, 319 Kan. at 85 ("a county's zoning power may be limited by state law through preemption, which occurs when the 'legislative intent to reserve exclusive

15

jurisdiction to the state [is] clearly manifested by statute—i.e., by expressly prohibiting cities from enacting any type of ordinance related to the state law'").

Austin Properties insists the code violates K.S.A. 12-757 by expanding its scope to include PUD applications. We disagree. The municipal code simply requires that, in Shawnee, the City follow the same procedures for establishing a PUD as the Kansas statute requires for any zoning amendment. This does not alter how K.S.A. 12-757 is to be applied throughout the state. We reject Austin Properties' argument that the Shawnee Municipal Code conflicts with state law in subjecting PUD applications to protest petitions and a supermajority requirement for approval.

*We do not review whether the City's decision was arbitrary.*

Finally, Austin Properties argues that even if the City was permitted to deny its application based on the lack of 3/4 majority support, the decision was so arbitrary as to be unreasonable. The Court of Appeals, after an extensive analysis, rejected Austin's claim.

We do not consider the panel's analysis or Austin Properties' claim that the City's denial was arbitrary because the City did not have the legal authority to issue the denial. Without a 2/3 majority vote in favor of denial, the City could not legally deny Austin Properties' application during its first round of considerations. The Court of Appeals erred in considering a question that was not properly before it.

CONCLUSION

We reverse the Court of Appeals and the district court. We remand the case to the district court with instructions to grant summary judgment in Austin Properties' favor consistent with this opinion. We further direct the district court to return the case to the

16

City with instructions to proceed with its consideration of Austin Properties' application in line with this opinion.

Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed, and the case is remanded with directions.