IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 127,166

PRAIRIEWOOD HOLDINGS, LLC,
*Appellant,*

v.

BOARD OF RILEY COUNTY COMMISSIONERS,
*Appellee.*

SYLLABUS BY THE COURT

To count the acreage in a unit of real property held by tenants in common towards a zoning protest petition under K.S.A. 12-757(f)(1), all tenants in common must sign the petition.

Review of the judgment of the Court of Appeals in 65 Kan. App. 2d 792, 573 P.3d 688 (2025). Appeal from Riley District Court; GRANT D. BANNISTER, judge. Oral argument held January 26, 2026. Opinion filed June 5, 2026. Judgment of the Court of Appeals affirming in part and reversing in part the district court is affirmed. Judgment of the district court is affirmed in part and reversed in part.

*Richard H. Seaton Sr.*, of Seaton Law Offices, LLP, of Manhattan, argued the cause and was on the brief for appellant.

*Jacob A. Hansen*, county counselor, argued the cause, and *Clancy Holeman*, former county counselor, was with him on the brief for appellee.

The opinion of the court was delivered by

STEGALL, J.: A vineyard in the Wildcat Creek Valley sought permission from the Board of Riley County Commissioners (the Commission) to expand its operations

1

through a process called an amended planned unit development (Amended PUD). Some neighbors signed a protest petition. Under K.S.A. 12-757(f)(1), a zoning amendment is subject to a protest petition when the petition is signed "by the owners of record of 20% or more of the total real property within the area required to be notified by this act." One of the vineyard's neighboring properties was owned by two parties as tenants in common. Only one of the parties—Michael and Rebecca Mosier—signed the protest petition.

When calculating whether the protest petition met the required 20% threshold, the Commission chose to count only half of the acreage of the Mosier property—reasoning that only half of the property owners had signed the petition. Even so, the protest petition narrowly missed the 20% threshold—but would have exceeded the threshold if the entire Mosier property had been included. On appeal, the Court of Appeals ruled that, in the context of a protest petition, limiting tenants in common to their proportionate share of ownership was legally correct. Prairiewood Holdings LLC (Prairiewood) (one of the protest petitioners) petitioned for review of that holding. The Commission cross-petitioned, arguing that the Court of Appeals erred in holding that its Amended PUD process was subject to the protest petition process in the first instance. We granted both petitions.

DISCUSSION

We first examine whether this dispute was subject to a protest petition at all. The question presents a pure question of law we review de novo. See *Austin Properties v. City of Shawnee*, 320 Kan. 226, 230, 564 P.3d 1262 (2025). The vineyard was not seeking rezoning, but rather an amendment to a PUD within its existing zoning classification. The parties do not contest the Court of Appeals' conclusion that K.S.A. 12-757 is inapplicable here *but for* its incorporation via local regulation. *Prairiewood Holdings v. Board of Riley County Comm'rs*, 65 Kan. App. 2d 792, 797-800, 573 P.3d 688 (2025).

Riley County Land Development Regulation (LDR) 4.19.F states in full:

> "The Department shall not issue a building permit for any development that is not in conformance with the Final Development Plan except that the total building square footage of the Final Development Plan may be increased by a maximum of 1%. Any proposed changes beyond these limits shall require an amendment to the Planned Unit Development district that follows the same public hearing process as the original rezoning to Planned Unit Development district. This process shall include an amended Preliminary Development Plan and Final Development Plan."

The Commission argues that this regulation only incorporates *some* of the requirements of K.S.A. 12-757—notice to surrounding landowners and an opportunity to be heard during a public hearing held by county commissioners. The Commission reasons that K.S.A. 12-757 includes both a "public hearing process" and a "protest petition" process—and that a "public hearing is an entirely separate procedure than that of a protest petition." Thus, by artificially bifurcating the statute in this way, the Commission can claim that only the so-called "public hearing" portions of K.S.A. 12-757 were incorporated into the LDR.

We find no support for this forced reading in the text of either the LDR or the statute itself. The process afforded by K.S.A. 12-757 is of a piece—that is, it functions as a coherent whole. The statute encompasses the entirety of the "public hearing" on proposed zoning changes—and part of that "public hearing" is the ability of nearby neighbors to protest. As the Court of Appeals pointed out, "Section 4.19.F. does not state that the process will be the same as a rezoning permit, *except* for the protest petition procedure." *Prairiewood Holdings*, 65 Kan. App. 2d at 799. The operative phrase of the LDR is "same . . . process as the original rezoning." This must include *all* of the process. See *Austin Properties*, 320 Kan. at 238 ("The municipal code simply requires that, in

Shawnee, the City follow the same procedures for establishing a PUD as the Kansas statute requires for any zoning amendment."). We affirm the Court of Appeals on this point.

Next, we examine whether the Court of Appeals erred in holding that a tenant in common may only bind or commit a proportional share of the land owned to a protest petition. Once again, the question is one of law, and our review is de novo. 320 Kan. at 230.

K.S.A. 12-757 reads in relevant part as follows:

"(f)(1) Except as provided in subsection (g), whether or not the planning commission approves or disapproves a zoning amendment, *if a protest petition against such amendment is filed in the office of the city clerk or the county clerk within 14 days after the date of the conclusion of the public hearing pursuant to the publication notice, signed* by the owners of record of 20% or more of any real property proposed to be rezoned or *by the owners of record of 20% or more of the total real property within the area required to be notified by this act of the proposed rezoning of a specific property*, excluding streets and public ways and property excluded pursuant to paragraph (2) of this subsection, the ordinance or resolution adopting such amendment shall not be passed except by at least a ¾ vote of all of the members of the governing body.

(2) For the purpose of determining the sufficiency of a protest petition, if the proposed rezoning was requested by the owner of the specific property subject to the rezoning or the owner of the specific property subject to the rezoning does not oppose in writing such rezoning, such property also shall be excluded when calculating the 'total real property within the area required to be notified' as that phrase is used in paragraph (1) of this subsection." (Emphases added.)

We have never addressed how the acreage of property owned by tenants in common is calculated for purposes of reaching the 20% threshold requirement for a

protest petition under K.S.A. 12-757. The two cases cited by Prairiewood, *Pfannenstiel v. Central Kansas Power Co.*, 186 Kan. 628, 352 P.2d 51 (1960), and *Horner v. Ellis*, 75 Kan. 675, 90 P. 275 (1907), are unilluminating. Those cases, respectively, merely stand for the propositions that: (1) a cotenant can recover damages for the entire property from a tortfeasor; and (2) a cotenant has superior title to a possessor of land with no title. Thus, this case presents a question of first impression.

The Court of Appeals majority found K.S.A. 12-757(f) ambiguous because "the Kansas Legislature did not clearly indicate whether *all owners* to a property must sign a protest petition or whether simply *an owner* of an adjoining property may satisfy the requirements of K.S.A. 12-757(f)." *Prairiewood Holdings*, 65 Kan. App. 2d at 803. The panel majority examined differing approaches from other jurisdictions and cited favorably the interpretive canon that "American property law favors freedom to use one's property as the owner chooses. Zoning restrictions are a restraint on that freedom and therefore these restrictions must be narrowly applied." 65 Kan. App. 2d at 805. The Court of Appeals also noted that the Legislature has adopted a proportionality approach in similar situations. 65 Kan. App. 2d at 805-06; see K.S.A. 13-1376. That statute deals with the requirements for petitioning for the establishment of public parking after the creation of a benefit district and provides that "[i]n any case where the owners of lands within the benefit district are tenants in common or joint tenants, each cotenant or joint tenant shall be considered a landowner to the extent of his or her undivided interest in said land." K.S.A. 13-1376.

Though the two statutes are clearly unrelated, the Court of Appeals nevertheless reasoned that to "create a different requirement for a protest petition under zoning circumstances in K.S.A. 12-757 would be at odds with K.S.A. 13-1376." 65 Kan. App. 2d at 806. Judge Pickering dissented. She argued that the plain language of K.S.A. 12-757 did not limit a tenant in common to signing for only a proportionate share of the acreage in support of a protest petition. And rather than reading K.S.A. 13-1376 as support for the

5

broader notion of a proportionate ownership rule, she saw the differences in statutory language as an indication that the Kansas Legislature knows how to adopt a proportionality rule when it wants to—and that in this instance, the Legislature chose not to. 65 Kan. App. 2d at 808-12 (Pickering, J., dissenting).

First, we agree with the panel majority that K.S.A. 12-757(f)(1) is ambiguous. The text is fairly amenable to at least three interpretations—either (1) everyone who owns an undivided interest in each unit of the real property used to satisfy the 20% threshold must sign the protest petition; or, (2) only one person who owns an undivided interest in each unit of the real property used to satisfy the 20% threshold must sign; or, (3) people who own an undivided interest in any unit of the real property used to satisfy the 20% threshold may sign, but their signature can only commit a proportional share of the land to the protest petition. To resolve this ambiguity, we resort to tools of statutory construction. See *In re Wrongful Conviction of Warsame*, 320 Kan. 92, 96, 563 P.3d 1281 (2025).

Second, we agree with the panel's reliance on the canon of construction that requires us to construe ambiguities in land use regulations in favor of the landowner. As the Court of Appeals put it, "property law favors freedom to use one's property as [one] chooses" and because "[z]oning restrictions are a restraint on that freedom" they "must be narrowly applied." *Prairiewood Holdings*, 65 Kan. App. 2d at 805. See *Koppel v. City of Fairway*, 189 Kan. 710, 713, 371 P.2d 113 (1962) ("Zoning ordinances, being in derogation of the right of private property, should be liberally construed in the property owner's favor, and where exceptions appear they are liberally construed in favor of the property owner."); see also *Sprayberry v. Board of Comm'rs of Putnam County*, 366 Ga. App. 810, 814, 884 S.E.2d 429 (2023) (noting that any ambiguity in a zoning ordinance "must be construed in favor of the free use of the property"); *Senter v. Kosciusko Cnty. Bd. of Zoning*, 251 N.E.3d 584, 591 (Ind. App. 2025) ("We also must construe zoning ordinances in a manner that favors the free use of land."); *Dirt Road Development v.*

*Hirschman*, 316 Neb. 757, 764, 7 N.W.3d 438 (2024) ("The interpretation of zoning regulations is also informed by general property law. The right to full and free use and enjoyment of one's property in a manner and for such purposes as the owner may choose, so long as it is not for the maintenance of a nuisance or injurious to others, is a privilege protected by law."); 2 Blackstone, Commentaries on the Laws of England 2 (1768) (describing the right of property as "that sole and despotic dominion which one man claims and exercises over the external things of the world, in total exclusion of the right of any other individual in the universe").

When property is owned by tenants in common, there is ownership "'by two or more persons, in equal or unequal undivided shares, each person having an equal right to possess the whole property but no right of survivorship.'" *M & I Marshall & Ilsley Bank v. Higdon*, 319 Kan. 572, 579, 556 P.3d 498 (2024). That is, each owner of the jointly owned property has a percentage of "ownership" in the property, but also has the full, though shared, right of possession and use of the property. Conceptually, there is a sense in which a tenant in common simultaneously "owns" both all the property and only a part of the property.

It is this apparent paradox that creates a counting problem in the context of signing a petition on behalf of the property one owns. Can the tenant in common, acting alone, speak for all the property; only part of the property; or none of the property? Logically, these are the three possible rules that could apply, which correspond to the three reasonable ways to interpret K.S.A. 12-757 we outlined above. Either the Mosiers can bind *all* the acreage they own to the protest petition; or, they can bind *none* of it without the co-signatures of the other tenants in common; or—in Solomonic fashion—the law can "split-the-difference" and permit the Mosiers to sign for *half* of the land (or whatever the proportional share ends up being). The panel below chose the latter rule.

7

A review of the caselaw suggests there are jurisdictions opting for each of the three different options. For example, it appears likely that the Mosiers could protest on behalf of the entire property under Nebraska law because, there, whether a joint tenant objects for the entire property is a question of fact. And when one joint tenant objects, a presumption arises that the one objecting represents the whole property unless there is evidence to the contrary. *Bonner v. City of Imperial*, 149 Neb. 721, Syl. ¶¶ 2-3, 32 N.W.2d 267 (1948). Meanwhile, other jurisdictions have recognized the practical reality that due to the unique nature of a tenancy in common, splitting the difference by choosing a rule of proportionality may be the only way to protect all the ownership interests in play. "Upon any other rule a cotenant of land might be powerless to prevent an unwarranted imposition of this burden upon the land, even though he held the major interest therein. His cotenant might be an infant, or might be absent from the state." *Los Angeles Lighting Co. v. City of Los Angeles*, 106 Cal. 156, 160, 39 P. 535 (1895). In Connecticut, the general rule for protest petitions requiring owners of a certain percentage of adjoining land to sign is that "'all of the property owners of a specific piece of property must sign the [protest] petition for their land to be counted.'" *High Ridge Real Estate Owner, LLC v. Board of Representatives of City of Stamford*, 342 Conn. 423, 438, 270 A.3d 76 (2022). We conclude that Connecticut's rule is the most faithful way to interpret the statutory text in Kansas.

K.S.A. 12-757 requires that a protest petition be signed by "the owners of record of 20% or more of the total real property within the area required to be notified by this act." It is presumably the case that *all* the tenants in common of a specific unit of real estate will be "owners of record." Permitting such a unit to be counted toward the 20% threshold without the signatures of all the owners of record seems contrary to the intent of the statute. Moreover, though we acknowledge the practical seduction of a "split-the-difference" approach, we are unconvinced by the panel's decision to adopt such a rule by

analogizing to other, unrelated statutes. The panel dissent correctly points out that the most this can tell a reviewing court is that the Legislature knew how to write a proportionality statute and chose not to do so in this instance.

This leaves us where we started—with an ambiguous statute and a clear rule of construction that protects the presumptive right of property owners to use their land as they see fit, without government interference or regulation. Applying that rule of construction here requires us to resolve the ambiguity in favor of the desired property use and against the legitimacy of the protest petition. We therefore hold that to count the acreage in a unit of real property held by tenants in common towards a protest petition under K.S.A. 12-757(f)(1), *all* tenants in common must sign the petition. Thus, in this case, the Mosier property should have been excluded *entirely* from the Commission's calculation, not just halved. We affirm the Court of Appeals as right for the wrong reason on this issue. *Nicholson v. Mercer*, 319 Kan. 712, 717, 559 P.3d 350 (2024) ("The Court of Appeals is affirmed as being right for the wrong reason.").

Judgment of the Court of Appeals affirming in part and reversing in part the district court is affirmed. Judgment of the district court is affirmed in part and reversed in part.

LUCKERT, J., not participating.