<hr/>

[No. 19434.   In Bank.—February 28, 1895.]

THE LOS ANGELES LIGHTING COMPANY, Respondent, v. THE CITY OF LOS ANGELES et al., Appellants.

Street Improvement—Delay of Proceedings—Authority of Cotenant to Sign Protest.—Under the act of 1889, page 158, the protest against a proposed street improvement by the owners of a majority of the frontage of the property fronting thereon, is effectual to bar further proceedings in relation to the improvement for the period of six months; and such protest is not rendered ineffectual by reason of the fact that the protest was only signed by one of several cotenants of a lot of land fronting upon the proposed improvement.

Id.—Rights and Powers of Cotenant—Presumption.—Although a cotenant has no power to create an encumbrance upon the entire estate, or to impose any burden upon the interests of his cotenants, he may at any time protect the entire estate from injury or loss, and his act will inure to the benefit of his cotenants, and their authority for his acts will be presumed, where it does not appear that any of the cotenants objected or signed a petition for the improvement.

Id.—Signature of Name of Cotenant in his Presence.—Where the name of a cotenant is signed by another cotenant in his presence, and at his request, the signature is sufficient to entitle it to be considered as a protest by both cotenants against the improvement.

Id.—Form of Protests.—The protests contemplated by the statute are not required to be executed with any particular formality, and it is sufficient if they indicate to the city council that the proposed improvement is objected to, and that this objection is made by the owners of a majority of the frontage upon the line of the work.

Id.—Authority of Agent to Sign Protest.—The statute does not require that the authority to sign the protest, if signed by an agent, shall accompany the protest, nor is it necessary that the authority of the

agent should be in writing, though the council may require proof of the authority, if challenged.

Id.—Signature of Corporation—General Manager—Official Title.— The protest of a corporation signed by one who is in fact its general manager, having authority to protect the interests of the corporation, is to be regarded as the protest of the corporation, although not signed as general manager, but merely by the official designation of president or secretary of the corporation.

Id.—Signature by Executors.—Executors are expressly authorized by the statute to sign a protest as the "owner" for the purposes of the act.

Id.—Protest Against Part of Improvement.—A protest is sufficient for the work objected to by it, notwithstanding it does not embrace all the work enumerated in the resolution of intention for the street improvement; and the city council cannot, by including work which the property owners object to with work which they desire, compel them to accept the objected part, or to be deprived of the part which they wish to have done, and it is immaterial whether the different classes of work upon the same street are included in one paragraph of the resolution of intention or in different paragraphs.

Id.—Authority of Council.—Where the resolution of intention consists of distinct classes of improvements upon designated portions of the same street, or of different streets, it is competent for the council to order only one or more of these classes to be done, the doing of which is not stopped by a protest.

Appeal from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial.

The facts are stated in the opinion of the court.

*C. T. H. Palmer, C. McFarland,* and *E. W. McKinstry,* for Appellants.

The president, secretary, or general manager of a corporation had no authority to sign the protest except under affirmative direction or action of the board of directors. (*Mulligan* v. *Smith,* 59 Cal. 223–25; *Kahn* v. *Board of Supervisors,* 79 Cal. 399.) A single tenant in common could not represent the whole of the frontage of the tract owned in common. (Freeman on Cotenancy and Partition, sec. 185; *Scott* v. *State,* 1 Sneed, 633, 634; *Hager* v. *Spect,* 52 Cal. 581; *Stevens* v. *Town of Norfolk,* 46 Conn. 227; *Tipping* v. *Robbins,* 71 Wis. 507; *Tevis* v. *Hicks,* 38 Cal. 240; *Mulligan* v. *Smith,* 59 Cal. 225, 226; *City of St. Louis* v. *Laclede Gas Light Co.,* 96 Mo. 197; 9

Am. St. Rep. 334.) Part of the work could not be protested against. (*Stockton* v. *Whitmore,* 50 Cal. 555, 556; *Dougherty* v. *Miller,* 36 Cal. 87; *Dougherty* v. *Hitchcock,* 35 Cal. 523.)

*Brewton A. Hayne,* Town Attorney for Berkeley, *amicus curiæ.*

*Cheney & Cronin,* and *John S. Chapman,* for Respondent.

HARRISON, J.—The city council of Los Angeles adopted a resolution of intention, June 5, 1893, for certain improvements on Aliso street, in said city, and at the same time, under the provisions of the act of February 27, 1893 (Stats. of 1893, p. 33), determined that bonds should be issued to pay the cost of the improvement. Within ten days after this resolution of intention had been published and posted, protests against the work, purporting to represent a majority of the frontage on the line of said proposed improvement, were delivered to the clerk of the city council on behalf of the plaintiff and other property owners; but, notwithstanding said protests, that body passed an order authorizing the work to be done, and invited proposals for doing the same. The Bituminous Lime Rock Paving and Improvement Company, one of the appellants herein, filed with the city clerk its proposal to do the work in accordance with the invitation therefor, and its proposal having been accepted, and the contract awarded to it, the plaintiff commenced this action to enjoin the street superintendent and the said appellants from entering into said contract. The plaintiff had judgment in the court below, and the defendants have appealed. The main issue presented at the trial was the sufficiency of the protests to bar any further action by the city council until after the expiration of six months, the appellants contending that some of the signatures thereto were unauthorized, and that the protests did not. represent a majority of the frontage on the line of the improvement.

It is provided by section 3 of the Street Improvement Act (Stats. of 1889, p. 158) that: "The owners of a majority of the frontage of the property fronting on said proposed work or improvement, where the same is for one block or more, may make a written objection to the same within ten days after the expiration of the time of the publication and posting of said notice, which objection shall be delivered to the clerk of the city council, who shall indorse thereon the date of its reception by him, and such objections so delivered and indorsed shall be a bar for six months to any further proceedings in relation to the doing of said work or making said improvement, unless the owners of the one-half or more of the frontage, as aforesaid, shall meanwhile petition for the same to be done."

Section 16 of the same act declares that: "The person owning the fee, or the person in whom on the day the action is commenced appears the legal title to the lots and lands by deeds duly recorded in the county recorder's office of each county, or the person in possession of lands, lots, or portions of lots or buildings, under claim, or exercising acts of ownership over the same, for himself, or as the executor, administrator, or guardian of the owner, shall be regarded, treated, and deemed to be the 'owner' for the purpose of this law, according to the intent and meaning of that word as used in this act."

1. One of the questions involved herein is the effect of the signature to the protest by one of the several cotenants of a lot of land fronting upon the proposed improvement, the appellant contending that such protest should be entirely disregarded upon the ground that a cotenant has no implied authority to do any act affecting the interest of the other cotenants in the land. It is undoubtedly true that it is not within the power of a cotenant to create an encumbrance upon the entire estate, or to impose any burden upon the interests of his cotenants therein, nor can he, by any act of his, confer jurisdiction upon any other body or tribunal to impose

such burden, as was held in *Mulligan* v. *Smith*, 59 Cal. 206. This rule of inability is, however, entirely inapplicable to the acts of the cotenant in a case like the present. One cotenant can at any time protect the entire estate from injury or loss without call'ng to his aid the assistance of the other cotenants, and his act will inure to their benefit. He can resist an intruder, or evict a trespasser, remove an encumbrance, or redeem from a burden, and since his acts in this behalf are in the interest of and for the benefit of his cotenants, their authority therefor, if necessary, will be presumed. We hold, therefore, that a cotenant is authorized to sign a protest aga'nst the improvement of a street by the city council under the aforesaid act. Upon any other rule a cotenant of land might be powerless to prevent an unwarranted imposition of this burden upon the land, even though he held the major interest therein. His cotenant might be an infant, or might be absent from the state, and, if the majority of the frontage of land to be assessed for the improvement was held in cotenancy, there would be no means of avoiding the unnecessary burdens of assessment by a protest, unless such protest could be made by a cotenant. Whether the entire frontage of the lands held in common, or only his proportionate share thereof, is to be counted in determining the amount of frontage represented by the protest, is not involved upon this appeal. This question might arise if one cotenant should favor and another object to the improvement, but in the present case it does not appear that any of the cotenants signed a petition for the improvement, and the superior court, in estimating the extent of frontage represented by the protest, counted only the proportionate share of the cotenant in the land represented by him.

2. Roch Sarrail and Joseph Couget owned a lot of land having twenty-five feet frontage on the line of the proposed improvement, and the protest was signed "Sarrail ni Couget." It was shown at the trial that this signature was made by Sarrail in the presence of

Couget, and at his request.   This was sufficient to entitle it to be considered as a protest by them against the improvement.   The protests contemplated by this statute are not required to be executed with any particular formality.   They do not create any burden or obligation, and are not to be executed with the ceremonies required for a transfer of real estate, or for creating a charge thereon.   It is sufficient if they indicate to the city council that the proposed improvement is objected to, and that this objection is made by the owners of a majority of the frontage upon the line of the work.   The statute does not require that the authority to sign the protest, if signed by an agent, shall accompany the protest, nor was it necessary that the authority of Couget to Sarrail should be in writing.   When the council came to consider the sufficiency of the protest they could then require the production of the authority, if it was challenged; but if on its face a protest purports to have been signed on behalf of the owners of a majority of the frontage, a disregard of it by the council is at the risk of their future action in ordering the improvement being without their jurisdiction.

3. The protest on behalf of the plaintiff was signed by its president, and it is contended that it should have been disregarded, for the reason that it had not been specifically directed by the board of directors of the corporation.   It was shown at the trial that the president of the corporation was also its general manager, and that the by-laws of the corporation authorized the general manager to supervise and control the affairs of the company, subject to the board of directors.   We are of the opinion that under this power the president, as such general manager, had authority to do any act which in his judgment was suitable to protect the interests of the corporation, or to preserve its property, and that the signing of the protest is to be regarded as such an act.   The fact that he signed it as president, rather than as general manager, is immaterial.   Similar observations may be made of the protest signed by the secre-

tary of another corporation, who was also its general manager.

Objections are made to other signatures, but none of them require any special notice. The signature by the executors of the estate of Amestoy was properly held sufficient. The statute expressly designates executors as the "owner" for the purpose of the act.

4. The protest was sufficient for the work objected to, notwithstanding that it did not embrace all the work enumerated in the resolution of intention. The city council cannot, by including certain work which the property owners object to with work which they desire, compel them to accept the objectionable portion, or be deprived of that which they wish to have done. The resolution of intention is only a proposition by the council, and frequently consists of distinct classes of improvements upon designated portions of the same street, or of different streets; and in such case it is competent for the council to order only one or more of these classes to be done. In either case the owner may protest against any portion of the work included in the resolution, without including in his protest all of the work embraced therein, and it is immaterial whether the different classes of work upon the same street are included in one paragraph or in different paragraphs. The right of the owner to protest is the same in each instance.

5. A brief has been filed in this case by an *amicus curiæ*, attacking the constitutionality of that portion of the statute which authorizes the issuance of bonds, and this question has also been discussed in the briefs filed on behalf of the respective parties to the action; but, as the filing of the protest operated to deprive the city council of Los Angeles of all power to order the improvement, there could be no bonds issued, and any question regarding the validity of such bonds, or of the statute authorizing their issuance, would be purely hypothetical, and not a proper subject for determination herein. There are many propositions which

might be suggested for consideration in determining the constitutionality of these statutory provisions, in addition to those presented in the briefs filed, and we must decline to pass upon this question until an issue shall be presented in which it is directly involved.

The order and judgment appealed from are affirmed.

TEMPLE, J., McFARLAND, J., GAROUTTE, J., and VAN FLEET, J., concurred.