[Civ. No. 14782. First Dist., Div. Two. Feb. 15, 1952.]

CHADWICK M. MORIN et al., Respondents, v. CITY COUN-
CIL OF THE CITY OF SAN JOSE et al., Appellants.

Robert E. Cassin, City Attorney, and Eugene L. Rendler, Assistant City Attorney, for Appellants.

Charles H. McDonald, City Attorney (Sunnyvale), J. Rainey Hancock, City Attorney (Los Gatos), Herman J. Mager, City Attorney (Mountain View), and C. N. Ozias, City Attorney (Fresno), as Amici Curiae on behalf of Appellants.

Burnett & Burnett for Respondents.

PATTERSON, J. pro tem.—This is an appeal from the judgment granting a peremptory writ of mandate to compel the City Council of the City of San Jose to find valid certain protests against the annexation of contiguous territory and to set aside any determination to the contrary.

On December 5, 1949, the city council by resolution commenced proceedings to annex territory designated as "Bradley Manor No. 3." The proceedings were initiated under the provisions of Annexation Act of 1913, Government Code, sections 35100-35157. Pursuant to the statute January 23, 1950, at 8 p. m. was fixed as the time for hearing protests. On that date purported protests were filed on behalf of the owners of 386 of the 668 parcels in the territory to be annexed. In view of the large number of protests the council continued the hearing for one week to determine their sufficiency. On January 30th the following week the council recessed to meet as a committee of the whole in a closed meeting out of the presence of the protestants or their representatives and considered the merits of the protests. They then returned to the council room and declared the protests to be insufficient in that they were not signed by a majority of the owners in the area to be annexed. The attorney for the protestants asked wherein the protests were insufficient. The council declined to answer and suggested that he should see the city attorney the following day. A resolution finding the protests insufficient was then adopted.

The plaintiffs as landowners and taxpayers filed on their own behalf and as representatives of the other protestants a petition for a writ of mandate to sustain the protests. An alternative writ was issued directing the council to show cause on February 17, 1950, why a peremptory writ should not issue. An answer was filed and the matter was set for

trial on March 22, 1950. In the meantime an election was held on February 23, 1950, with the result that 326 ballots were cast for annexation and 291 against.

. It developed at the trial that the council after receiving the protests directed the city clerk to check their sufficiency. The clerk testified that she checked the names listed on the protests against the record holders of the legal title and reported insufficient those protests wherein any discrepancies occurred. Prior to the January 30th meeting she found 52 of the protests showed a variance and so informed the council at the closed meeting on that date. Upon the basis of this report the council without a hearing declared the protests invalid. After the meeting of January 30th she made a further examination of the entire petition and found 14 additional protests to be insufficient. This would leave 320 valid protests and the total required to defeat the annexation would be 335.

It appeared from the testimony of the clerk that she found 20 protests insufficient because made by less than all of the joint tenants, 18 protests insufficient because one joint tenant signed the names of all joint tenants, 23 insufficient because signed by persons other than the holders of record title and five insufficient because the protestants requested in writing that their names be struck from the petition. The trial court found all of the 386 protests to be valid and that the action of the council in refusing to grant a public hearing on the protests and in attempting to determine their sufficiency in secret session and out of the presence of the protestants, their counsel or the public was in violation of the protestants' rights and in excess of the jurisdiction of the council; that the decision of the council was contrary to fact and unsupported by the evidence. A judgment was entered granting a peremptory writ of mandate.

██ The measure of power to be exercised by the council is determined by the Annexation Act of 1913. (*American Distl. Co.* v. *City Council of Sausalito*, 34 Cal.2d 660 [213 P.2d 704, 18 A.L.R.2d 1247].) That act provides as follows: "At any time not later than the hour set for hearing objections to the election, any owner of property within the territory may make a written protest against the election. The protest shall state in general terms the name of the owner of the property affected and the location and area of the property." and that, "At the time set for hearing protests the city legislative body shall hear and pass

upon all protests so made. If it finds that protest is made by the owners of a majority of separate parcels of property within the territory, no further proceedings for the annexation of any of the territory shall be taken for one year after the finding.''

The only issue before the trial court was whether the council exceeded its authority in finding the protests insufficient. If the protests were sufficient the council was without jurisdiction to do anything except terminate the proceedings. It is contended that the court's finding that the protests were sufficient is unsupported. The defendants contend that the council was justified in declaring insufficient those protests which were signed by one but less than all of the cotenants and that also those in which one cotenant signed the name of all cotenants. ██ It is an established principle of law in this state that one cotenant may protect the estate from injury or loss without calling to his aid the assistance of the other cotenants. This rule was invoked in *Los Angeles L. Co.* v. *Los Angeles*, 106 Cal. 156 [39 P. 535], in which it was held that one cotenant could sign a valid protest against a proposed street improvement, the court said: ''One of the questions involved herein is the effect of the signature to the protest by one of the several cotenants of a lot of land fronting upon the proposed improvement, the appellant contending that such protest should be entirely disregarded upon the ground that a cotenant has no implied authority to do any act affecting the interest of the other cotenants in the land. It is undoubtedly true that it is not within the power of a cotenant to create an encumbrance upon the entire estate, or to impose any burden upon the interests of his cotenants therein, nor can he, by any act of his, confer jurisdiction upon any other body or tribunal to impose such burden, as was held in *Mulligan* v. *Smith*, 59 Cal. 206. This rule of inability is, however, entirely inapplicable to the acts of the cotenant in a case like the present. One cotenant can at any time protect the entire estate from injury or loss without calling to his aid the assistance of the other cotenants, and his act will inure to their benefit. He can resist an intruder, or evict a trespasser, remove an encumbrance, or redeem from a burden, and since his acts in this behalf are in the interest of and for the benefit of his cotenants, their authority therefor, if necessary, will be presumed. We hold, therefore, that a cotenant is authorized to sign a protest against the improvement of a street by the

city council under the aforesaid act. Upon any other rule a cotenant of land might be powerless to prevent an unwarranted imposition of this burden upon the land, even though he held the major interest therein.'' ▮ We are of the opinion that the same reasoning is applicable in this case where the annexation would subject the property to the burden of municipal taxation. The defendants rely upon *Directors of Fallbrook Irr. Dist.* v. *Abila*, 106 Cal. 355 [39 P. 794], decided by the same court a few days after it decided *Los Angeles L. Co.* v. *Los Angeles, supra.* In this later case the court held that one cotenant alone could not bind his cotenant in signing a petition for the organization of an irrigation district. This was an act, however, which would place a burden upon the property instead of protecting it from a burden. This is consistent with the language and the decision in *Los Angeles L. Co.* v. *Los Angeles, supra.*

▮ We think that the *Los Angeles L. Co.* v. *Los Angeles* case, *supra,* also disposes of the objection to the protests in which one cotenant signed the names of his cotenants. The court said: ''The protests contemplated by this statute are not required to be executed with any particular formality. They do not create any burden or obligation, and are not to be executed with the ceremonies required for a transfer of real estate, or for creating a charge thereon. It is sufficient if they indicate to the city council that the proposed improvement is objected to, and that this objection is made by the owners of a majority of the frontage upon the line of the work. The statute does not require that the authority to sign the protest, if signed by an agent, shall accompany the protest, nor was it necessary that the authority of Couget to Sarrail should be in writing. When the council came to. consider the sufficiency of the protest they could then require the production of the authority, if it was challenged; but if on its face a protest purports to have been signed on behalf of the owners of a majority of the frontage, a disregard of it by the council is at the risk of their future action in ordering the improvement being without their jurisdiction.'' These 38 protests which the city council erroneously held to be insufficient added to the parcels which the clerk reported to the council as sufficient and which were not challenged would be more than one half of the parcels. The council should have so found and in accordance with the statutory provision thereupon terminated the proceedings.

In view of our conclusions it is unnecessary to pass upon the remaining protests which the council held to be insufficient for other reasons.

Plaintiffs complain that the protestants were not granted a hearing upon the protests as required by the statute. A closed hearing out of the presence of the protestants is not the kind of hearing contemplated by Government Code, section 35131. Such a hearing contemplates a fair and impartial hearing at which competent evidence may be presented. (*Saks & Co.* v. *City of Beverly Hills,* [1]107 Cal.App.2d 260 [237 P.2d 32], *Carstens* v. *Pillsbury,* 172 Cal. 572 [158 P. 218], 29 C.J. 285.)

 Defendants urge that if the council incorrectly held these protests insufficient the court should have remanded the matter to the council for a further hearing in accordance with the court's views. There would be no reason to remand it to the council for a further hearing. The trial court's finding of sufficiency required the conclusion that the city council had no discretion to do other than comply with the statute and terminate the proceedings. (*American Distl. Co.* v. *City Council of Sausalito, supra.*)

The judgment is affirmed.

Nourse, P. J., and Goodell, J., concurred.