No. 127,166

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

PRAIRIEWOOD HOLDINGS, LLC,
*Appellant*,

v.

BOARD OF RILEY COUNTY COMMISSIONERS,
*Appellee*.

SYLLABUS BY THE COURT

Under K.S.A. 12-757, if owners of 20 percent of the total real property within specified distances from land to be rezoned sign a protest petition, the governing body must approve the rezoning by a supermajority. If a protesting owner is a tenant in common or a joint tenant with right of survivorship in a relevant tract, their signature requires that acreage proportionate to their ownership interest within the specified distance be counted toward the 20 percent needed for a successful protest petition.

Appeal from Riley District Court; GRANT D. BANNISTER, judge. Oral argument held March 11, 2025. Opinion filed July 11, 2025. Affirmed in part and reversed in part.

*Richard H. Seaton Sr.*, of Seaton Law Offices, LLP, of Manhattan, for appellant.

*Jacob A. Hansen*, deputy county counselor, and *Clancy Holeman*, county counselor, for appellee.

Before ATCHESON, P.J., COBLE and PICKERING, JJ.

COBLE, J.:  Prairiewood Holdings, LLC, appeals the Riley County District Court's decision, affirming the approval of an amended planned unit development (PUD) application by the Board of Riley County Commissioners (Commissioners). Prairiewood

1

contends that the Commissioners erred in concluding that the amended PUD application was not subject to protest petition and that the protest petition, should one have been required, failed for want of the requisite number of signatures. We agree with Prairiewood that the PUD application process was subject to protest petition and reverse the district court's contrary decision on that basis. However, remand is unnecessary, as we affirm the district court's ultimate conclusion that the Commissioners properly calculated the signatures on the protest petition. Each cotenant signing a petition should be considered only to the extent of his or her undivided interest in said tract, so the Commissioners acted lawfully and reasonably in halving the acreage of the Mosier property when determining the protest petition percentage attributable to that property.

## Factual and Procedural Background

Because the parties do not dispute many of the operative facts, the appeal is submitted on two questions of law. Accordingly, few of the background facts are essential to resolve the appeal.

David and Danielle Tegtmeier are the sole members of Lawe, LLC, which holds approximately 157 acres of land in the Wildcat Creek Valley. The Tegtmeiers operate a vineyard and winery on the property.

In 2014, the Tegtmeiers applied to rezone their property from agricultural to agribusiness. Because the business consisted of the vineyard, the winery with an event center attached, and an unimproved parking lot to accommodate their business, the application was approved without objection from neighboring properties.

In 2004, the Kansas Legislature passed the Agritourism Promotion Act, K.S.A. 32-1430 et seq., designed to promote businesses that bring tourism to Kansas via agricultural

activities. In December 2020, the Tegtmeiers applied for and obtained an agritourism registration certificate that extended limited liability to their winery business operations.

In 2022, the Tegtmeiers filed an application for replatting and final development plan amendment (amended PUD). The Tegtmeiers submitted letters of approval from the Kansas Department of Commerce and the Manhattan Convention and Visitors Bureau in conjunction with their filing. The amended PUD sought to amend its original development plans in two respects. One amendment would add parking and utilities for recreational vehicles, expand existing parking spaces, build a 4,000-square-foot event center, convert the existing event center into a restaurant within the winery building, construct 12 small cabins with parking, and build a 3,000-seat outdoor amphitheater to hold events. Another amendment would replat a portion of the property as a separate lot for the construction of a single-family dwelling. This second amendment—the family dwelling—passed the Planning and Development Board (Planning Board) and the Commissioners unanimously without objection and is not contested in this appeal. Accordingly, reference to the amended PUD hereinafter refers exclusively to the first portion of the amendments—the expansion.

Riley County, through its Planning and Development Department staff (Staff), provided actual notice to neighboring property owners and publication notice in the local newspaper for a public hearing on the proposed amended PUD. The Staff prepared a report, considering traffic impact, noise assessment, and stormwater drainage studies conducted by private firms.

On May 9, 2022, the Planning Board held a public hearing, considering testimony from Bob Isaac, the project planner; the Tegtmeiers; and several neighboring landowners. While many of the Tegtmeiers' neighbors expressed reserved approval for most of the planned changes, they communicated grave concerns about safety on Wildcat Creek Road, a narrow unimproved gravel road, and about the potential for increased dust caused

3

by that traffic, given the anticipated events at the proposed amphitheater. Based on these concerns, the Planning Board amended its recommendation to approve all proposed changes in the amended PUD except for the amphitheater. The Planning Board then approved the amended recommendation on a vote of four to one.

After the hearing, the Staff reviewed the application and determined that the amended PUD did not require approval by the Planning Board or the Commissioners because the amendments did not involve a request to rezone the property and because the requested changes were all allowed uses within the existing zoning designation. Accordingly, the Staff recommended that the Commissioners approve the entire amended PUD, including the amphitheater.

The Staff provided notice of a public hearing to property owners within 1,000 feet of the property subject to the amended PUD. The Tegtmeiers' property is bordered on the west almost completely by the Fort Riley United States Army installation. Several property owners with land to the east of the Tegtmeiers' property signed and filed a protest petition. The petition was filed on time and signed by Michael and Rebecca Mosier, David and Carol Adams, David and Susan Mitchell, and Prairiewood Holdings, LLC, owned by Kail and Rebecca Katzenmeier. The parties do not dispute that the protest petition complied with applicable statutory requirements, except for the number of requisite signatures.

The Staff determined that the protest petition did not include the requisite number of signatures because one of the neighboring properties—the Mosier property—was held as tenants in common and only one of the cotenants signed the petition. Without the full acreage of the Mosier property, the protest petition failed to achieve signatures for 20 percent of the neighboring property owners. Therefore, the Staff concluded that the protest petition was invalid under K.S.A. 19-2960(b).

4

The amended PUD petition was presented to the Commissioners on June 2, 2022. At this hearing, Isaac informed the Commissioners that the amended PUD was not subject to a protest petition because it did not involve rezoning the property. The Commissioners approved the amended PUD, including the amphitheater, in a vote of two to one.

Prairiewood appealed to the Riley County District Court. The parties entered certain stipulations of fact, and the case proceeded to a bench trial on the unresolved facts. After considering the evidence, the district court issued a written memorandum decision, affirming the Commissioners' approval of the amended PUD.

Prairiewood appeals the district court's decision.

## THE REQUEST FOR AN AMENDMENT TO THE PLANNED UNIT DEVELOPMENT WAS PROPERLY SUBJECT TO PROTEST PETITION

Prairiewood first challenges the district court's decision, and the Commissioners' rejection of the protest petition, due to the determination that a protest petition was not a legally available avenue for them to utilize under the circumstances of the Tegtmeiers' application for an amended PUD. Both the Commissioners and the district court decided that the PUD was simply being amended and not rezoned. They further found that because K.S.A. 12-757(f)(1) only allows a protest petition to be filed if the Planning Board "approves or disapproves a zoning amendment," and the Riley County regulations did not require the same public hearing process for an amendment to the PUD as an original rezoning, a protest petition was not required and the county was not bound by a protest petition.

We first briefly acknowledge our jurisdiction to hear this appeal. K.S.A. 12-760 outlines that "[w]ithin 30 days of the final decision of the city or county, any person

5

aggrieved thereby may maintain an action in the district court of the county to determine the reasonableness of such final decision." Although this law enables review of only reasonableness, our Supreme Court has consistently found that "Kansas courts have jurisdiction to review a zoning authority's actions for 'reasonableness' and 'the lawfulness of the action taken, that is, whether procedures in conformity with law were employed . . . ." *Austin Properties v. City of Shawnee*, 320 Kan. 226, 229, 564 P.3d 1262 (2025).

Because the parties dispute whether the procedure for filing a protest petition under K.S.A. 12-757(f) applied to the Tegtmeiers' application for an amended PUD, this dispute requires interpretation and application of a statute, a regulation, or both, which are questions of law subject to unlimited appellate review. *Austin Properties*, 320 Kan. at 230.

As our Supreme Court recently reaffirmed in *Austin Properties*, K.S.A. 12-741 authorizes cities and counties to enact "'planning and zoning laws and regulations . . . which are not in conflict with' state law." 320 Kan. at 231. And K.S.A. 12-755(a) plainly authorizes governing bodies to "'adopt zoning regulations which may include, but not be limited to, provisions which:  . . . [p]rovide for planned unit developments,'" among multiple other activities. 320 Kan. at 231.

The parties generally agree that K.S.A. 12-757 governs the dispute. Two portions of that statute are particularly relevant to the issue before us:  subsection (a), governing amendments to zoning regulations or zoning changes to specific property, and subsection (f), governing the procedure for filing a protest petition against such an amendment. Subsection (a) applies to the question of whether the protest petition was available to Prairiewood and the other neighbors under these circumstances.

> "(a) The governing body, from time to time, may supplement, change or
> generally revise the boundaries or regulations contained in zoning regulations by

6

amendment. A proposal for such amendment may be initiated by the governing body or the planning commission. If such proposed amendment is not a general revision of the existing regulations and affects specific property, the amendment may be initiated by application of the owner of property affected. Any such amendment, if in accordance with the land use plan or the land use element of a comprehensive plan, shall be presumed to be reasonable. The governing body shall establish in its zoning regulations the matters to be considered when approving or disapproving a rezoning request. The governing body may establish reasonable fees to be paid in advance by the owner of any property at the time of making application for a zoning amendment." K.S.A. 12-757(a).

The plain language of subsection (a) suggests that the procedure outlined in K.S.A. 12-757 governs only *zoning* changes, not amendments to a planned unit development within the existing zoning classification.

This reading of K.S.A. 12-757 would seem to resolve the issue since Prairiewood does not argue that other statutory authority allows them to file a protest petition to the Tegtmeiers' application to amend their PUD. But, as noted above, when developing land use regulations, a governing body may issue its own regulations so long as those local regulations do not conflict with state statutes. K.S.A. 12-741(a); *Austin Properties*, 320 Kan. at 231. Through the Riley County Land Development Regulations (Regulations), Riley County adopted specific procedures for the approval of PUDs. If those regulations do not conflict with statutory authority, the regulations carry the full force of law.

Section 4.19 of the Regulations governs PUD applications. Pertinent to this appeal is Section 4.19.F., which addresses amended PUDs:

"The Department shall not issue a building permit for any development that is not in conformance with the Final Development Plan except that the total building square footage of the Final Development Plan may be increased by a maximum of 1%. Any proposed changes beyond these limits shall require an amendment to the Planned Unit Development district that *follows the same public hearing process as the original*

7

*rezoning* to Planned Unit Development district. This process shall include an amended Preliminary Development Plan and Final Development Plan." (Emphasis added.)

The Tegtmeiers sought and obtained Commissioners' approval for the creation of a PUD district in 2014. The amended PUD they proposed in 2022 is consistent with the rezoning of their property as a PUD, but it also increases the building square footage on the property. The emphasized language of Section 4.19.F. provides that an amended PUD that increases the building square footage by over 1 percent requires application through the *same process as a rezoning request* would require. Regulations § 4.19.F. Although none of the witnesses addressed the actual amount of building square footage before and after the amended PUD, there can be no credible dispute that the Tegtmeiers' amended PUD increased the building square footage on the PUD by more than 1 percent. The amended PUD called for the addition of a single-family home, an additional 4,000 square-foot event center, 12 new cabins, and a 3,000-seat amphitheater. So, Section 4.19.F. requires the Tegtmeiers' amended PUD application to comply with the rezoning application process.

At trial before the district court, Riley County Planning Director Amanda Webb testified that the Tegtmeiers' original application for approval of their PUD submitted in 2014 was subject to the approval procedure outlined in K.S.A. 12-757 for rezoning, including the availability of a properly filed protest petition. But she argued that the amended PUD was not subject to a protest petition because it did not involve a zoning change. However, her understanding of the requisite procedural protections conflicts with the plain language of Regulations § 4.19.F. Because the amended PUD increased the total building square footage of the plan by more than 1 percent, the same procedure used to approve the original PUD, including the zoning change, was required to approve the amended PUD. Webb provided no authority for her position that this procedure excluded a protest petition when she concedes that the original PUD application was subject to protest petition.

8

The Commissioners also called as a witness Isaac, who participated in drafting the Regulations. He testified that Section 4.19.F. was intended to refer to the notice-by-publication process and submission to the planning board for recommendations to the governing body. He denied that the county intended to adopt a protest petition process for amendments to PUDs. On cross-examination, Isaac admitted that Staff sent out notices for a protest petition in this case but contended that the issuance of the notices was a mistake. This testimony undercuts his credibility. If Isaac had helped draft the regulations and the intent of Section 4.19.F. was not to encompass a protest petition procedure for amended PUDs, then it seems his department would not have issued protest petition notices in this case. Nevertheless, it is not within the appellate court's purview to assess credibility. See *Board of Miami County Comm'rs v. Kanza Rail-Trails Conservancy, Inc.*, 292 Kan. 285, 325, 255 P.3d 1186 (2011) ("'In evaluating the evidence to support the district court's factual findings, an appellate court does not weigh conflicting evidence, evaluate witnesses' credibility, or redetermine questions of fact.'"). Furthermore, Isaac's testimony—credible or otherwise—is immaterial because the language of Section 4.19.F. is clear and unambiguous. See *Steffes v. City of Lawrence*, 284 Kan. 380, 386, 160 P.3d 843 (2007) ("When language is plain and unambiguous, there is no need to resort to statutory construction. An appellate court merely interprets the language as it appears; it is not free to speculate and cannot read into the statute language not readily found there.").

Section 4.19.F. does not state that the process will be the same as a rezoning permit, *except* for the protest petition procedure. The regulation does not specify that the process for obtaining approval of an amended PUD will be the same as rezoning in terms of notice, submission to the planning board, and decision by the governing body. The regulation clearly states that the procedure is the *same* as rezoning and contains no exceptions. Because Riley County regulations cannot conflict with state zoning statutes, the rezoning petition process must include an opportunity for a protest petition under K.S.A. 12-757. As a matter of statutory and regulatory interpretation, therefore, a process

9

for reviewing an amended PUD which includes an increase of more than 1 percent in the building square footage must also comply with the procedure outlined within K.S.A. 12-757.

For these reasons, we find that the Commissioners and the district court improperly concluded that a protest petition was not available in the process of approving the Tegtmeiers' amended PUD application. We reverse the district court's decision finding otherwise. However, because we find that the Commissioners and district court properly calculated the number of signatures on the protest petition, remand of this case is unnecessary as analyzed below.

RILEY COUNTY PROPERLY CALCULATED THE NUMBER
OF SIGNATURES NEEDED TO PRESENT A PROTEST PETITION

Prairiewood contends that not only was it able to utilize the protest petition process, but the Commissioners did not properly calculate the acreage of properties attributable to the signatories of the protest petition. At trial, Will Habiger, a Riley County Geographic Information System specialist, explained how the signature requirements were determined. Habiger concluded that the Tegtmeiers' property boundary extended over 316.89 acres. Habiger then consulted the protest petition to determine which property owners signed it. He then added together the acreage of the parcels owned by the protest petition signatories.

While doing that, he was instructed by Craig Cox, the Riley County Deputy County Counselor, to halve the Mosier property because the property was held by two parties as tenants in common and only one party—Michael and Rebecca Mosier—signed the protest petition. The other cotenant—Kelly Mosier—had not signed the petition. The Mosier property boundary consisted of 28.52 acres, but Habiger included only 14.26 acres in his calculations. Based on the reduction in acreage of the Mosier property,

10

Habiger calculated a total acreage for the protest petition signatories of 63.09 acres. A simple math calculation resulted in a conclusion that only 19.9 percent of the property owners had signed the petition. If the excluded 14.26 acres of the Mosier property had been included in the calculation, the protest petition would have consisted of 24.4 percent of the property owners' signatures.

Habiger ran a hypothetical calculation using a right-of-way easement along part of Wildcat Creek Road of 40 feet rather than 60 feet, as used in the original calculation. The change in the right-of-way slightly increased the acreage for the Adams, Prairiewood, and Sheffield properties. The total acreage for the protest petition property owners was then 63.52 acres. The total acreage for the Tegtmeier property also slightly increased to 318.96 acres. The percentage yield by this hypothetical calculation was 19.91 percent.

On appeal, Prairiewood does not challenge Habiger's calculations. It challenges only the decision to halve the Mosier property to account for the one-half interest property owner who did not sign the protest petition. Therefore, the reasonableness of the Commissioners' rejection of the protest petition hinges on the propriety of this decision. Whether both parties to an undivided one-half interest in property must sign a protest petition is a question of law involving the operation of tenancy in common. See *Baker v. Rogers*, 88 Mass. App. Ct. 1113, 40 N.E.3d 1056 (2015) (unpublished opinion), at * 1 ("[P]roperty rights in a tenancy in common present questions of law."). As such, we exercise unlimited appellate review over the question. *State v. Hankins*, 304 Kan. 226, 230, 372 P.3d 1124 (2016) ("[A]ppellate courts generally exercise unlimited review over questions of law.").

K.S.A. 12-757(f) establishes the requirements for a valid protest petition under these circumstances. This statute provides:

11

"(f)(1) Except as provided in subsection (g), whether or not the planning commission approves or disapproves a zoning amendment, if a protest petition against such amendment is filed in the office of the city clerk or the county clerk within 14 days after the date of the conclusion of the public hearing pursuant to the publication notice, signed by the owners of record of 20% or more of any real property proposed to be rezoned or *by the owners of record of 20% or more of the total real property within the area required to be notified by this act* of the proposed rezoning of a specific property, excluding streets and public ways and property excluded pursuant to paragraph (2) of this subsection, the ordinance or resolution adopting such amendment shall not be passed except by at least a 3/4 vote of all the members of the governing body.

(2) For the purpose of determining the sufficiency of a protest petition, if the proposed zoning was requested by the owner of the specific property subject to the rezoning or the owner of the specific property subject to the rezoning does not oppose in writing such rezoning, such property also shall be excluded when calculating the 'total real property within the area required to be notified' as that phrase is used in paragraph (1) of this subsection." (Emphasis added.) K.S.A. 12-757(f).

At trial, the Commissioners interpreted the phrase "by the owners of record of 20% or more of the total real property within the area required to be notified by this act" to require that all owners of the property must sign the petition to include the entire piece of property in the calculation for the protest petition. In its brief, the Commissioners present no legal argument in support of their position but merely conclude that Cox properly advised Habiger to halve the acreage of the Mosier property.

Later, in a Supreme Court Rule 6.09 (2025 Kan. S. Ct. R. at 40) letter, the Commissioners offered as authority K.S.A. 13-1376, which addresses the use of a protest petition regarding the use of real property where a benefit district has been created by a city of the first class. This statute outlines that in a case where the owners of property within the benefit district are tenants in common or joint tenants, each cotenant or joint tenant shall be considered only to the extent of his or her undivided interest in said land. K.S.A. 13-1376.

12

The Commissioners also offered as authority caselaw from other jurisdictions. In *High Ridge Real Estate Owner, LLC v. Board of Representatives of City of Stamford*, 342 Conn. 423, 440, 270 A.3d 76 (2022), the Supreme Court of Connecticut made clear that a cotenant is not considered an "owner" for the purposes of a protest petition unless all cotenants join the protest. And, in *Schwartz v. McDaniel*, 202 Okla. 324, 325, 213 P.2d 568 (1950), the Supreme Court of Oklahoma noted the rule that a cotenant in a tenancy in common has no authority to act as an agent for their cotenant in leasing the interest of the cotenant in the land unless explicitly authorized to do so by the cotenant.

In contrast, Prairiewood contends that either tenant in a tenancy in common may act to protect the interests of the property and, therefore, one tenant holding an undivided half interest in property may sign a protest petition on behalf of the entire property for purposes of calculating the requisite number of signatures on a protest petition. It relies on Kansas cases which, while not involving protest petitions, have found that a cotenant has the right to protect and defend the entire tract of co-ownership. See *Pfannenstiel v. Central Kansas Power Co.*, 186 Kan. 628, Syl. ¶ 1, 352 P.2d 51 (1960) ("One tenant in common may maintain an action in tort against a third party stranger to recover the entire amount of damages to the cotenancy realty caused by the stranger's tortious act."); *Horner v. Ellis*, 75 Kan. 675, Syl. ¶ 3, 90 P. 275 (1907) (A tenant in common may recover possession of the entire tract from the holder of a voidable deed.).

As a matter of statutory interpretation, the Kansas Legislature did not clearly indicate whether *all owners* to a property must sign a protest petition or whether simply *an owner* of an adjoining property may satisfy the requirements of K.S.A. 12-757(f). Based on the authority provided by the parties and that discovered through independent research, the issue appears to be one of first impression in Kansas.

In Kansas, a tenancy in common is defined as "'tenancy by two or more persons, in equal or unequal undivided shares, each person having an equal right to possess the

13

whole property but no right of survivorship.'" *M & I Marshall & Ilsley Bank v. Higdon*, 319 Kan. 572, 579, 556 P.3d 498 (2024) (quoting Black's Law Dictionary 1769 [11th ed. 2019]). Each tenant in common of real property has undivided title and right to possession of the entire property, subject to the use and enjoyment of the property by his or her cotenants. *Davis v. Shawler*, 214 Kan. 501, 507, 520 P.2d 1270 (1974).

Other jurisdictions to take up this issue have concluded that one cotenant may lodge a protest to an improvement or some other action that affects the property (which encompasses a zoning change or, in this case, a substantial change to the character of an adjoining property). The reasoning appears to be based on the idea that one cotenant must have the authority to act to preserve the value of the property on behalf of other cotenants. This includes the ability to lodge a protest petition. See *Los Angeles Lighting Co. v. City of Los Angeles*, 106 Cal. 156, 160, 39 P. 535 (1895).

Contrary to Prairiewood's position, the California Supreme Court in *Los Angeles Lighting Co.* supported the proportional approach taken by the Commissioners in weighing a protest petition signed by only one cotenant. 106 Cal. at 160.

> "One cotenant can at any time protect the entire estate from injury or loss without calling to his aid the assistance of the other cotenants, and his act will inure to their benefit. He can resist an intruder, or evict a trespasser, remove an encumbrance, or redeem from a burden, and since his acts in this behalf are in the interest of and for the benefit of his cotenants, their authority therefor, if necessary, will be presumed. We hold, therefore, that a cotenant is authorized to sign a protest against the improvement of a street by the city council under the aforesaid act. Upon any other rule a cotenant of land might be powerless to prevent an unwarranted imposition of this burden upon the land, even though he held the major interest therein. His cotenant might be an infant, or might be absent from the state, and, if the majority of the frontage of land to be assessed for the improvement was held in cotenancy, there would be no means of avoiding the unnecessary burdens of assessment by a protest, unless such protest could be made by a cotenant. Whether the entire frontage of the lands held in common, or only his

14

proportionate share thereof, is to be counted in determining the amount of frontage represented by the protest, is not involved upon this appeal. This question might arise if one cotenant should favor and another object to the improvement, but in the present case it does not appear that any of the cotenants signed a petition for the improvement, and the superior court, in estimating the extent of frontage represented by the protest, counted only the proportionate share of the cotenant in the land represented by him." 106 Cal. at 160.

In *Bonner v. City of Imperial*, 149 Neb. 721, 724, 32 N.W.2d 267 (1948), the Nebraska Supreme Court took a different approach in interpreting a statutory requirement authorizing a procedure to object to a public improvement project. In *Bonner*, the city had counted spouses separately to determine the number of property owners and then determined that a majority had not objected because only one spouse in each household had lodged an official objection. The court found "that where one resident joint tenant files [an] objection and another does not that a presumption arises that the tenant objecting did so as the representative of the joint tenancy which presumption shall prevail and obtain until and unless the contrary is made to appear." 149 Neb. at 727.

Kansas could adopt a similar approach and create a presumption that applies to an entire tract of land when one cotenant lodges an objection. But an issue exists with this presumption, which is that—in the context of a protest petition—our statutes require affirmative action by the protesting party after adequate notice. It seems at odds with this requirement, then, to create an affirmative presumption through a cotenant's inertia.

It may be simply that the non-signing cotenant has no real engagement with the property and does not pay attention to issues that arise concerning the property, but it could just as likely be that the cotenant approved of the changes the Tegtmeiers wished to make to their property and so opted not to sign the protest petition. We do not know whether the lack of the second cotenant's signature signifies an agreement between cotenants to protect the whole of the property or not. We likewise do not know whether

15

the cotenants might even agree, for example, whether the neighboring development of the Tegtmeiers' property would increase the Mosiers' property value—thus, there is no "protection" resulting from a protest—or whether the protest petition is protecting the Mosier property from some diminution in value, or even how to characterize either of those values. Creating a presumption, then, for all cotenants in favor of the objection does not properly distinguish between this non-exclusive realm of possibilities. Given that the statute imposes an affirmative obligation to lodge a protest to the proposed course of action, a presumption based on silence appears contrary to the legislative intent. If only one cotenant believes a proposed county action deserves protest, the statute would seem to place the burden on that cotenant to persuade the other cotenants to sign the petition.

The Commissioners rely on the Connecticut Supreme Court case discussed above when presenting their policy arguments, but in *High Ridge Real Estate Owner*, that court was considering a different type of protest rule, which counted signatures of owners, and not acreage or land within a given proximity of the property being rezoned, nor did that court come to the same conclusion regarding a proportionality rule. 342 Conn. at 438-39. But we need not rely on that case, as Commissioners suggest, to acknowledge the policy rationale behind a proportionality calculation for property held jointly or by cotenants. That is, American property law favors freedom to use one's property as the owner chooses. Zoning restrictions are a restraint on that freedom and therefore these restrictions must be narrowly applied. A protest petition seeks to prevent a landowner from using his or her property in a particular manner. Accordingly, the requirements for satisfying that protest must be strictly applied in favor of the landowner seeking the zoning change, and that precludes us from guessing whether a nearby property owner intends to protest the change. See, e.g., *M.S.W., Inc. v. Board of Zoning Appeals of Marion County*, 29 Kan. App. 2d 139, 151-52, 24 P.3d 175 (2001) (citing *Koppel v. City of Fairway*, 189 Kan. 710, 713, 371 P.2d 113 [1962]) (specifying that "zoning ordinances, being in derogation of the right of private property, should be liberally construed in the property owner's favor").

16

Considering the practical implications of presuming an objection from silence, a proportional calculation of acreage for properties consisting of multiple owners that do not all sign the protest petition appears the most just application of the signatory requirements of K.S.A. 12-757(f).

This proportionality rule also seems most consistent with the Kansas Legislature's directive in K.S.A. 13-1376. We recognize that this statute, as discussed above, is found in a chapter of the Kansas Statutes entirely separate from K.S.A. 12-757 and relates only to cities and petitions for the acquisition of lands for benefit district parking stations and certainly does not bind us to any particular action. But both statutes do involve, at least to some degree, a governing body's access to private land, and the private property owner's right to petition the government regarding its access to private land. To create a different requirement for a protest petition under zoning circumstances in K.S.A. 12-757 would be at odds with K.S.A. 13-1376.

A review of the legislative history of K.S.A. 12-757 is unilluminating. The present form of K.S.A. 12-757 has existed since 1967. See L. 1967, ch. 88, § 1. However, the language "owners of 20% of" real estate or real property has existed since the statute was enacted in 1921. See L. 1921, ch. 100, § 3. Although the older iteration of the statute mentions only "owners" and the current version says "owners of record," this difference appears immaterial, and none of the legislative committee discussions or testimony pertained to the change to "owners of record." See S.B. 23 (1991); K.S.A. 12-708 (Ensley 1982); K.S.A. 12-757. Nor do any testimony or notes shed light into the Legislature's intent regarding how cotenants might be treated as "owners." So, our dive into legislative history does nothing to assist us in resolving the ambiguity found in "owners of record" in K.S.A. 12-757(f).

The dissent suggests that we misread the plain language of K.S.A. 12-757(f) by adding the words "all of" to "by *all of* the owners of record" in K.S.A. 12-757(f)(1). See

17

slip op. at 23, 25. We respectfully disagree. Because the language of the statute simply says "owners" without further qualification, we must discern some other means of determining the Legislature's intent. In fact, the dissent's position requires the addition of the words "an" or "any" to the phrase "owners of record" such that the statute requires only "*any* owners of record" to sign the petition in order for the petition to be valid. But the plural use of "owners" in the statutes comes closer to suggesting "*all* owners of record" than it does to implying "*any* owner of record." And the policy reasons for adopting a proportionality calculation for property held jointly or by cotenants rather than assuming an entire tract joins a protest simply because one cotenant signed a petition have already been outlined above.

These policy concerns are better illustrated when viewed through the lens of a larger number of cotenants than those presented here. For a starker example of the potential unfairness of other methods of considering cotenants or joint tenants, see *Malir v. Maixner*, 174 Kan. 26, 254 P.2d 282 (1953). Although *Malir* did not involve a protest petition, there a man left a tract of land to his wife and five daughters as tenants in common with the wife getting a half interest and each daughter a one-tenth interest. 174 Kan. at 26. Under a one-owner rule, one of the daughters, owning only a 10% interest, could have committed the entire tract to a protest petition even if all the others (representing a 90% interest) either supported or were indifferent to the proposed zoning change. By the same token, under a unanimity rule, one daughter, again representing a small minority interest, could stymie the majority who wished to protest the rezoning by refusing to sign the petition.

For these reasons, we find that in any case where the owners of record of real property must sign a petition as specified in K.S.A. 12-757(f), and there is more than one owner of a single tract, such as where the owners are tenants in common or joint tenants, each cotenant or joint tenant shall be considered a landowner to the extent of his or her undivided interest in said tract. For the sake of clarity, though, we do not address other

18

more exotic types of property ownership in this opinion, such as condominium or cooperative ownership.

In sum, then, under K.S.A. 12-757, if owners of 20 percent of the total real property within specified distances from land to be rezoned sign a protest petition, the governing body must approve the rezoning by a supermajority. If a protesting owner is a tenant in common or a joint tenant with right of survivorship in a relevant tract, their signature requires that acreage proportionate to their ownership interest within the specified distance be counted toward the 20 percent needed for a successful protest petition. For example, if A owns a 50 percent interest in a 5-acre tract wholly within the specified distance as a tenant in common with B, who owns 30 percent, and C, who owns 20 percent, then A's signature on a protest petition would require 2.5 acres to be counted toward the petition. B's signature would require 1.5 acres to be counted, and C's signature would require 1 acre to be counted.

Accordingly, the Commissioners acted lawfully and reasonably in halving the acreage of the Mosier property when determining the protest petition percentage attributable to that property. Because Prairiewood presents no other challenge to the protest petition calculation, the protest petition fails. The Commissioners properly approved the Tegtmeiers' amended PUD without unanimous agreement.

Affirmed in part and reversed in part.

* * *

PICKERING, J., dissenting:  I agree with the majority's well-reasoned opinion that the amended planned unit development (PUD) application was subject to protest petition. Under my plain language reading of K.S.A. 12-757, however, I respectfully disagree with how the majority opinion has interpreted this statute. Thus, I dissent.

19

*A plain language reading of K.S.A. 12-757*

K.S.A. 12-757(f) states:

"(f)(1) Except as provided in subsection (g), whether or not the planning commission approves or disapproves a zoning amendment, if a protest petition against such amendment is filed in the office of the city clerk or the county clerk within 14 days after the date of the conclusion of the public hearing pursuant to the publication notice, signed by the owners of record of 20% or more of any real property proposed to be rezoned or by the owners of record of 20% or more of the total real property within the area required to be notified by this act of the proposed rezoning of a specific property, excluding streets and public ways and property excluded pursuant to paragraph (2) of this subsection, the ordinance or resolution adopting such amendment shall not be passed except by at least a 3/4 vote of all of the members of the governing body.

(2) For the purpose of determining the sufficiency of a protest petition, if the proposed rezoning was requested by the owner of the specific property subject to the rezoning or the owner of the specific property subject to the rezoning does not oppose in writing such rezoning, such property also shall be excluded when calculating the 'total real property within the area required to be notified' as that phrase is used in paragraph (1) of this subsection."

As the statute reads, "owners of record of 20% or more of any real property" includes tenants in common and joint tenants with right of survivorship. The entire statute, notably, does not include any language specifically addressing a tenant in common or a joint tenant with right of survivorship, particularly in calculating a property's total acreage for a protest petition.

Consequently, under a plain language reading of the statute, I would not find that any specific protest petition calculation applicable only to tenants in common and joint tenants with right of survivorship is found in K.S.A. 12-757. With even more certainty, I would not find that either a tenant in common or a joint tenant with right of survivorship must adhere to a heightened signatory requirement that *all* owners must be signatories to

20

a protest petition to receive 100% credit towards the protest petition property calculations.

In considering the statutory interpretation of K.S.A. 12-757, *State v. Haug*, 237 Kan. 390, 699 P.2d 535 (1985), is instructive. There, the Kansas Supreme Court considered whether a penal statute, K.S.A. 21-4619 (repealed), provided for the expungement of a diversion. The *Haug* court found that "[n]owhere in K.S.A. 21-4619 is there any reference to the expungement of anything other than records of *convictions*. The statute is clear and unambiguous in this regard and is not open to construction or speculation as to the legislative intent behind it." 237 Kan. at 391. The court reached this conclusion based on "the rule in Kansas that in determining whether a statute is open to construction, or in construing a statute, ordinary words are to be given their ordinary meaning and courts are not justified in disregarding the unambiguous language." 237 Kan. at 391. *Haug* explains that statutes, particularly those "subject to strict construction[,] should not be read so as to add that which is not readily found therein, or to read out what, as a matter of ordinary language, is in it." 237 Kan. at 392.

The basis for this is the presumption that "'the legislature understood the meaning of the words it used and intended to use them; that the legislature used the words in their ordinary and common meaning; and that the legislature intended a different meaning when it used different language in the same connection in different parts of a statute.'" *Boatright v. Kansas Racing Comm'n*, 251 Kan. 240, 245-46, 834 P.2d 368 (1992) (quoting *Rogers v. Shanahan,* 221 Kan. 221, 223-24, 565 P.2d 1384 [1976]). I find the majority opinion at odds with *Haug* by adding terms in K.S.A. 12-757. Now, tenants in common and joint tenants with right of survivorship must adhere to an additional exclusion requirement when signing a protest petition. That is, *each* owner in a tenancy in common and joint tenancy with right of survivorship must sign the protest petition for 100% of their property to be considered and calculated in the 20% petition protest requirements. The result could lead to excluding a percentage of the property when

21

calculating the protest petition's required 20% acreage. Nowhere is this signatory requirement present in the statute. I thus would not find this to be a proper plain language reading of K.S.A. 12-757's statutory language. See *Roe v. Phillips County Hospital*, 317 Kan. 1, 5, 522 P.3d 277 (2023) ("'When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be.'").

Further, subsection (f)(2) already explains when property "shall be excluded when calculating the 'total real property within the area required to be notified'" and therefore excluded from being a protest petition signatory. Under this subsection, the property is excluded "if the proposed rezoning was requested by the owner of the specific property subject to the rezoning or the owner of the specific property subject to the rezoning does not oppose in writing such rezoning[.]" There is no reference in this subsection to excluding a percentage of a tenant in common's total property or that of a joint tenant with right of survivorship.

Accordingly, after reading this exclusion subsection, one should rightly infer that the only owner to be excluded as a signatory of a protest petition is "if the proposed rezoning was requested by the owner of the specific property subject to the rezoning or the owner of the specific property subject to the rezoning does not oppose in writing such rezoning." K.S.A. 12-757(f)(2). This wording is also an example of "the legislature intend[ing] a different meaning when it used different language in the same connection in different parts of a statute." *Boatright*, 251 Kan. at 245-46. More importantly, this is in direct contrast to the Commission's exclusion of half of the Mosiers' property acreage, 14.26 acres, when calculating the Mosiers' acreage for the protest petition.

This signatory requirement placed upon all of the tenants in common or joint tenants with right of survivorship is also aligned with the Commission's interpretation of K.S.A. 12-757. In calculating the Mosiers' tenants in common protest petition signatory,

22

the Commission concluded that the term "owner" in K.S.A. 12-757 should be interpreted to mean "all of the owners." This is an improper reading of the statute. This addition of the word "all of" to "the owners" is reading the statute with additional wording despite the statute being unambiguous. See *Haug*, 237 Kan. at 391. Here, no new terms, such as "all of" the owners, should be added into one's reading of the statute.

Indeed, the Legislature knows the importance of "all" and when and when not to include "all" in the statutory language. The last portion of subsection (f)(1) purposely uses the word "all" and states:  "[T]he ordinance or resolution adopting such amendment shall not be passed except by at least a 3/4 vote of *all of the members* of the governing body." From this statutory language, one can undoubtedly find the Legislature had a clear intent to include "all" when referring to the members of the governing body.

The majority also points to K.S.A. 13-1376 in support. Slip op. at 17. I respectfully disagree. Rather, that statute illustrates a clear legislative intent to have each cotenant or joint tenant considered "a landowner to the extent of his or her undivided interest." In full, K.S.A. 13-1376 reads:

> "After a benefit district has been established, no further proceedings shall be taken unless there is filed with the city clerk within sixty (60) days of the passage of the ordinance creating the benefit district a petition requesting the establishment of public parking stations. Such petition shall be signed by the resident owners of real estate owning not less than fifty-one percent (51%) of the front feet of the real estate fronting or abutting upon any street included within the limits of the benefit district. In determining the sufficiency of the petition, lands owned by the city, county, state or United States or by nonresident owners of real estate within the benefit district shall not be counted in the aggregate of lands within such benefit district. After any petition has been signed by an owner of land in the benefit district, the change of ownership of said land shall not affect the petition.
> "*In any case where the owners of lands within the benefit district are tenants in common or joint tenants, each cotenant or joint tenant shall be considered a landowner*

23

*to the extent of his or her undivided interest in said land.* The owner of a life estate shall also be deemed the sole landowner for the purpose of this act. Conservators may petition for their conservatees when authorized by the district court so to do. Resident owner of land, as defined herein, shall be any landowner who has resided in the city for thirty days prior to the passage of the ordinance and owning land in the benefit district. A Kansas corporation having its registered office in the city and owning land in the benefit district shall be deemed a resident landowner. No suit shall be maintained in any court to enjoin or in any way contest the establishment of such parking stations or the establishment of a benefit district unless said suit be instituted and summons served within thirty (30) days from and after the date of the filing of such petition with the city clerk." (Emphasis added.)

The difference in how the Legislature has chosen to address a tenant in common or joint tenants between K.S.A. 13-1376 and K.S.A. 12-757 is quite stark. A plain language reading of K.S.A. 13-1376 demonstrates the Legislature's purposeful intention to address "tenants in common or joint tenants." Yet that same intention is not found under K.S.A. 12-757(f). Again, from my reading of K.S.A. 12-757, I would find that the Legislature chose not to differentiate between an owner of real property subject to the rezoning and a tenant in common and a joint tenant with right of survivorship.

Last, the majority opinion indicates that K.S.A. 12-757 is ambiguous. Still, an ambiguous notice statute supports this dissent. I shall explain.

K.S.A. 12-757 is first and foremost a notice statute that concerns a property owner's due process rights to protest a rezoning request. Reading this statute too broadly, as the majority has done, results in the Mosiers losing their *entire* statutory right to protest because only 50% of their property acreage is considered. An appellate court should not overstep its role by reading an ambiguous statute too broadly—particularly a notice statute pertaining to a property owner's right to protest. Such a broad interpretation results in the property owner not receiving adequate notice, thereby infringing on the

24

owner's right to due process. We can see this in the *one* notice letter the Riley County Planning & Development Environmental Health addressed to all three tenants in common: "KELLY A. MOSIER MICHAEL L. & REBECCA L. MOSIER." Nowhere in that one letter are the Mosiers advised that they must *all* sign the protest petition. A person of common intelligence should not have to guess at the statute's meaning to their detriment. Consequently, the majority's broad interpretation of K.S.A. 12-757 limits the Mosiers' right to protest, even though the Legislature has not signaled that this is the intended result.

In sum, my plain language reading of K.S.A. 12-757 does not require a holding that "all of the owners" in a tenancy in common must state whether he or she joins in the protest petition or their silence will mean the exclusion of their share of the property from the protest petition's total acreage. The statute simply does not state this. Therefore, I would reverse the district court's ruling that the Commissioners properly calculated the protest petition signatories' acreage of properties and return the Mosiers' property to its entirety, 28.52 acres, when calculating the Mosiers' acreage for the protest petition.